IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOUND VIEW INNOVATIONS, LLC,

Plaintiff;

v.                                                  Civil Action No. 16-116-RGA

FACEBOOK, INC.,

Defendant.

## MEMORANDUM OPINION

John C. Phillips, Jr., Esq., Megan C. Haney, Esq., PHILLIPS, GOLDMAN, MCLAUGHLIN &
HALL, P.A., Wilmington, DE; Alan S. Kellman, Esq. (argued), Tamir Packin, Esq., Edward B.
Geist, Esq., Tom BenGera, Esq., DESMARAIS LLP, New York, NY, attorneys for Plaintiff.

Jack B. Blumenfeld, Esq., Karen Jacobs, Esq., MORRIS, NICHOLS, ARSHT & TUNNELL
LLP, Wilmington, DE; Heidi Keefe, Esq. (argued), Sarah Whitney, Esq., Elizabeth Stameshkin,
Esq., COOLEY LLP, Palo Alto, CA; Phillip E. Morton, Esq., COOLEY LLP, Washington, DC,
attorneys for Defendant.

August 30, 2016

*Richard G Andrews*

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is Defendant's Motion to Dismiss for Lack of Patentable

Subject Matter Pursuant to 35 U.S.C. § 101. (D.I. 10). The matter has been fully briefed. (D.I.

11, 14, 17). The Court heard oral argument on July 1, 2016. (D.I. 34). For the reasons stated

below, the Court will grant Defendant's motion.

## I.    BACKGROUND

Plaintiff Sound View Innovations, LLC filed this patent infringement action against

Defendant Facebook, Inc. on February 29, 2016. (D.I. 1). Sound View alleges that Facebook

infringes U.S. Patent Nos. 5,991,845; 6,125,371; 6,732,181; 7,366,786; 7,412,486; 8,135,860;

and 8,095,593 ("the '593 patent"). (*Id.*). The asserted claims of the '593 patent are claims 1, 5,

9, 13, 14, and 15. (*Id.* at 31). On April 29, 2016, Facebook filed the instant motion to dismiss

Count Six of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that

the '593 patent claims patent-ineligible subject matter. (D.I. 10).

The '593 patent is entitled "Method for Managing Electronic Information, the Related

User Terminal and the Related Information Source." ('593 patent, (54)). The '593 patent

describes managing electronic "community interest" or "community information preference"

information. (*Id.* at (57); *see also* D.I. 11 at 6; D.I. 14 at 5). Employing (1) the information

preferences of an individual user, (2) the information preferences of other users in pre-defined

relationships to that user, and (3) at least one decision rule for each user, the claimed invention

distributes electronic information from information sources to the individual user's terminal.

('593 patent, 2:24–32, 6:45–7:2, 7:40–41, 8:13–40, 8:59–61, 8:62–10:6, 10:7–8).

1

Claim 1 of the '593 patent reads:

A method for managing electronic information, said electronic information being forwarded from at least one electronic information source (IS) of a plurality of electronic information sources (IS . . . ISx) towards a terminal of a corresponding first user of a plurality of terminals of corresponding users (U1 . . . Ux) through a communications network, (CN) said method comprising the steps of:

a.   at least one electronic information source of said plurality of electronic information sources (IS . . . ISx) sending said electronic information towards said terminal of said first user;

b.   the terminal of said first user (UI) and terminals of users related to said first user (U2, Ux) sending electronic information preferences towards a community interest management module (CIMM), said users being related to said first user based on pre-defined relationships; and

c.   said community interest management module (CIMM) determining community information preferences for said first user based on said information preferences of said first user and information preferences of said users related to said first user, sent towards said community interest management module (CIMM) and based on at least one decision rule determining whether or not to apply said information preferences in said community information preferences of said first user.

(*Id.* at 6:45–7:2). Independent claims 9 and 14 claim computer components—a "Community interest management module" and an "Electronic information source," respectively—configured to implement the method of claim 1. (*Id.* at 8:13–40, 8:62–10:6).

## II.   LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.*

("Factual allegations must be enough to raise a right to relief above the speculative level . . . on

the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

Moreover, there must be sufficient factual matter to state a facially plausible claim to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the

complaint's factual content "allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." (internal quotation marks omitted)). "In deciding a Rule

12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint,

matters of public record, as well as undisputedly authentic documents if the complainant's claims

are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010); *see*

*also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "A court

may also take judicial notice of the prosecution histories, which are 'public records.'" *Genetic*

*Techs. Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 526 (D. Del. 2014), *aff'd sub nom.*

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016) (citing *Hockerson–*

*Halberstadt, Inc. v. Avia Group Int'l, Inc.,* 222 F.3d 951, 957 (Fed. Cir. 2000); *Lum v. Bank of*

*Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

## B. Patent-Eligible Subject Matter

Section 101 of the Patent Act defines patent-eligible subject matter.  It provides:

"Whoever invents or discovers any new and useful process, machine, manufacture, or

composition of matter, or any new and useful improvement thereof, may obtain a patent therefor,

subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court

has recognized an implicit exception for three categories of subject matter not eligible for patent

3

protection: laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to avoid preemption of the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (internal quotation marks omitted); *Alice Corp.*, 134 S. Ct. at 2354. Still, "a process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Mayo Collaborative Servs.*, 132 S. Ct. at 1293–94 (emphasis and internal quotation marks omitted).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* for distinguishing "patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 134 S. Ct. at 2355. Under the first step of the *Alice* framework, the court must determine whether the claims are directed to a patent-ineligible concept. *Id.* "The dispositive inquiry is whether the concept to which a claim is drawn has 'no particular concrete or tangible form.'" *Morsa v. Facebook, Inc.*, 77 F. Supp. 3d 1007, 1014 (C.D. Cal. 2014) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014), *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015)), *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015); *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("[T]he court must first identify and define whatever fundamental concept appears wrapped up in the claim." (internal quotation marks omitted)). To evaluate whether an invention is directed to an "abstract idea," courts "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). "[F]undamental economic and conventional business practices are often found to be abstract

4

ideas, even if performed on a computer." *Id.* at 1335. Not "all improvements in computer-related technology are inherently abstract," however. *Id.* Nor are "claims directed to software, as opposed to hardware, . . . inherently abstract and therefore only properly analyzed at the second step of the *Alice* analysis." *Id.* Thus, in analyzing claims directed to computer-related technology under the first step of the *Alice* framework, a relevant question is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335–36.

If the court concludes that the claims are drawn to a patent-ineligible concept under the first step of the *Alice* framework, it must next look to "the elements of each claim both individually and as an 'ordered combination,'" *id.* at 1334, to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice Corp.*, 134 S. Ct. at 2355 (alteration and internal quotation marks omitted). "[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or adding insignificant postsolution activity." *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010) (internal quotation marks omitted). Similarly, "[s]imply appending conventional steps, specified at a high level of generality, . . . [i]s not enough to supply an inventive concept." *Alice Corp.*, 134 S. Ct. at 2357 (internal quotation marks and emphasis omitted). Further, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358.

Patent eligibility under § 101 is a question of law suitable for resolution on a motion to dismiss. *See OPI Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015);

*Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, 776 F.3d 1343, 1346
(Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 119 (2015). The Federal Circuit follows regional circuit
law for motions to dismiss. *Content Extraction*, 776 F.3d at 1346. The Federal Circuit has held
that the district court is not required to individually address claims not asserted or identified by
the non-moving party, so long as the court identifies a representative claim and "all the claims
are substantially similar and linked to the same abstract idea." *Id.* at 1348.

Sound View and Facebook have not identified any claim construction issues that would
bear on the § 101 analysis. (*See* D.I. 11, 14, 17). Thus, resolution of Facebook's § 101 motion
regarding the '593 patent is appropriate at this stage in the proceedings.

## III.   ANALYSIS

### A. PTAB Rejection of Claims 5 and 6 of the '239 Application

Facebook urges the Court to consider, in deciding this motion, a PTAB decision
regarding the patent eligibility of two claims of U.S. Patent Application No. 11/619,239 (the
"'239 Application"). (D.I. 11 at 13–16; D.I. 17 at 7–8). The '239 Application was co-pending at
the PTO with U.S. Patent Application No. 11/619,247, the application that resulted in the '593
patent. (*See* '593 patent, (21); D.I. 11-2 at 13–14). On October 7, 2010, the PTO provisionally
rejected what would become asserted claim 9 of the '593 patent as patentably indistinct from
claims 5 and 6 of the '239 Application. (D.I. 11-2 at 13–14). On October 12, 2010, the PTO
issued a final rejection of claims 5 and 6 of the '239 Application on the ground that they claimed
patent ineligible subject matter under § 101. (*Id.* at 34–35). The '239 applicants appealed the
PTO's decision to the PTAB, arguing that the recitation of a network and terminals in the
preamble of claim 5 rendered the claims patent eligible. (*Id.* at 65). On September 9, 2014, the

6

PTAB affirmed the PTO's rejection of claims 5 and 6 of the '239 Application under § 101. (*Id.* at 83–84). The '239 Application was abandoned on November 24, 2014. (*Id.* at 89).

Facebook argues that the Court should consider the PTAB's § 101 decision regarding the '239 Application because "Plaintiff seeks to assert substantially the same language in the '593 patent against Facebook." (D.I. 11 at 16). The PTO's rejection of claims 5 and 6 of the '239 Application occurred prior to the Supreme Court's decision in *Alice* and therefore did not consider the patentability of the claims under the standard applicable to the asserted claims in this case. (*See* D.I. 11-2 at 34–35); *Alice Corp.*, 134 S. Ct. at 2347. The PTAB did not apply the *Alice* standard in affirming the PTO's rejection. (*See* D.I. 11-2 at 83–84). Thus, the PTAB decision has no relevance, even as persuasive authority, to the § 101 motion under consideration.

## B. *Alice* **Step One**

Facebook argues that the asserted claims of the '593 patent "are directed to the abstract idea of managing information and preferences among members of a community." (D.I. 11 at 16). Facebook maintains that the abstract nature of the invention is demonstrated by the patent's repeated description of the invention as a "method for managing information." (*Id.*). Facebook also contends that the invention is abstract because it can be performed mentally or using pen and paper, for example, by a consumer survey company. (D.I. 17 at 11 n.3; D.I. 17-1; *see also* D.I. 11 at 16–17).

Sound View argues that the asserted claims are not directed to an abstract idea. (D.I. 14 at 12). Sound View characterizes the '593 patent as "generally directed to a community interest management system—for use in a communications network with multiple electronic information sources and multiple user terminals—that uses information preferences of an individual user as well as information preferences of other users related to that user based on pre-defined

7

relationships and also at least one decision rule for each user to determine community information preferences." (*Id.* at 13 (citing '593 patent, 1:33–2:38)). Sound View argues that, like in *Enfish*, the claims are not directed to an abstract idea because the "the plain focus of the claims is on an improvement to computer functionality itself." (*Id.* at 14 (quoting *Enfish, LLC*, 822 F.3d at 1336) (internal quotation marks omitted)). Sound View contends that the asserted claims of the '593 patent "focus on improving electronic information distribution systems" by solving "problems associated with known computer networking techniques" and by being "able to transmit more meaningful information from electronic information sources to terminal users in a computer network." (*Id.*). Specifically, Sound View argues that the '593 patent improves over known computer networking techniques, like RSS, which were able to transmit information to a user terminal only based on the user's preferences. (*Id.* at 17).

The asserted claims are directed to an abstract idea. Sound View maintains that the asserted claims "describe the interaction of information sources and user terminals in a computer network, and the components of the system that are used to identify and transmit more useful electronic information to user terminals than prior art systems." (*Id.* at 16). The patent states that "[a]n object of the present invention is to provide an electronic information management method . . . and a related system . . . wherein the electronic information management method is better suited to the information needs of a user of such a method and related devices." ('593 patent, 1:33–37). The patent also states that determining community information preferences according to the claimed invention enables electronic information sources "to send information that match the preferences of the first user but also the preferences of the buddies of the first user in this way provisioning the first user with information that better suit the interest of the first user." (*Id.* at 1:60–63). The patent does not, as Sound View argues, provide "computer-specific

8

solutions." (*See* D.I. 14 at 13, 22–23); *Electric Power Grp., LLC v. Alstom S.A.*, 2016 WL 4073318, at \*4, \*5–6 (Fed. Cir. Aug. 1, 2016) (holding that the claims at issue were directed to an abstract idea because "the focus of the claims [wa]s not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools" and distinguishing between "ends sought and particular means of achieving them, between desired results (functions) and particular ways of achieving (performing) them"). Like in *In re TLI Communications LLC Patent Litigation*, where "the inventor sought to 'provid[e] for recording, administration and archiving of digital images simply, fast and in such a way that the information therefore may be easily tracked,'" 823 F.3d 607, 612 (Fed. Cir. 2016), the invention of the '593 patent seeks to make a non-technological improvement to the non-technological problem of providing a user with information that is better suited to the user. *Compare Electric Power Grp., LLC*, 2016 WL 4073318, at \*3 (holding that claims focused "on collecting information, analyzing it, and displaying certain results of the collection and analysis" were directed to an abstract idea); *Morsa*, 77 F. Supp. 3d at 1014 (holding that the claims at issue were directed to the abstract ideas of "targeting advertisements to certain consumers, and using a bidding system to determine when and how advertisements will be displayed"); *OpenTV, Inc. v. Netflix Inc.*, 76 F. Supp. 3d 886, 893 (N.D. Cal. 2014) ("The concept of gathering information about one's intended market and attempting to customize the information then provided is as old as the saying, 'know your audience.'"); *and Tuxis Techs., LLC v. Amazon.com, Inc.*, 2014 WL 4382446, at \*5 (D. Del. Sept. 3, 2014) ("[T]argeted advertising is [a well-known] concept, insofar as matching consumers with a given product or service 'has been practiced as long as markets have been in operation.'"), *with Enfish, LLC*, 822 F.3d at 1337, 1339 ("Here, the claims are not simply directed to *any* form of storing tabular data, but instead are specifically directed to

9

a *self-referential* table for a computer database. . . . [T]he self-referential table recited in the claims on appeal is a specific type of data structure designed to improve the way a computer stores and retrieves data in memory.").

The asserted claims of the '593 patent thus are directed to the concept of offering more meaningful information to an individual based on his own preferences and the preferences of a group of people with whom he is in pre-defined relationships. The claimed concept is abstract.

## C. *Alice* **Step Two**

Facebook argues that the asserted claims of the '593 patent do not provide an inventive concept sufficient to transform the claimed abstract idea into patent-eligible subject matter. (D.I. 11 at 20). Facebook maintains that claim 1 recites a method with three steps: "(1) an information source sending information to a user; (2) the user sending information preferences to the community interest manager; and (3) the community interest manager determining community information preferences." (*Id.* at 21). Facebook maintains, further, that claims 9 and 14 do not limit the claims to patent-eligible applications of the abstract idea in claim 1 because they do not employ specific hardware, but instead use purely functional and generic terms to describe the computer components that perform the abstract method. (*Id.*). Facebook argues that the specification also does not disclose specific or innovative hardware. (*Id.* at 22). Instead, it discloses user terminals, electronic information sources, and a community interest management module, which are described in the patent as "generally known in the art." (*Id.* (citing '593 patent, 3:9–20, 1:13–14)).

Sound View argues that the '593 patent claims include inventive concepts that render them patent eligible. (D.I. 14 at 19). Sound View identifies two allegedly inventive concepts in particular. (*See id.* at 20–21). First, that the patented invention determines the community

10

information preferences of a user based on information preferences of that user, information

preferences of other users related to that user, and at least one decision rule. (*Id.* (citing D.I. 14-2

at 7–8)). Second, that the patented invention employs relationships between users that are

defined by a user, rather than determined based on characteristics of user profiles. (*Id.* at 21

(citing D.I. 14-3 at 15)). Sound View also argues that the asserted claims of the '593 patent do

not require merely generic computer components because they recite "specific computer

components assembled into a particular architecture to achieve the task at hand." (*Id.* at 23).

Further, Sound View maintains that the claims "describe *how* certain computer elements—for

example, information sources, user terminals, and a community interest management module—

function so as to solve problems that arose in prior art systems." (*Id.* at 24).

   Neither purported inventive concept that Sound View puts forth supports patent

eligibility. Sound View's reliance on the novelty of (1) providing information to a user based on

information preferences of that user, information preferences of other users related to that user,

and at least one decision rule and (2) employing relationships between users that are defined by a

user is unavailing. That the method is a new means of transmitting information is irrelevant to

the § 101 analysis. *Diamond v. Diehr*, 450 U.S. 175, 188–89 (1981). Additionally, the inventive

concepts that Sound View proffers are analogous to inventive concepts that courts have held

insufficient to confer patent eligibility on claims directed to an abstract idea. *See, e.g., Electric

Power Grp., LLC*, 2016 WL 4073318, at *4 ("[M]erely selecting information, by content or

source, for collection, analysis, and display does nothing significant to differentiate a process

from ordinary mental processes [that are patent ineligible]."); *Morsa*, 77 F. Supp. 3d at 1015–16

(holding that "targeting customers based on demographic criteria; requiring the bid amount to be

'modifiable'; making the advertisements 'searchable'; requiring the user to be the source of the

11

demographic information; altering the display of the advertisement in various ways; . . . using 'negative' criteria to determine not to present an advertisement to a given user[;] . . . altering a given advertisement's display based on its 'performance and/or . . . popularity'; requiring the advertisements to be delivered to users in a specific geographic location or on a specific wireless device; dictating that the advertisements be delivered via video or audio; and collecting user data in various ways" were not inventive concepts sufficient to confer patent eligibility). Further, Sound View's proposed inventive concepts are distinguishable from those under consideration in *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, which the Federal Circuit held were sufficient to confer patent eligibility on claims directed to an abstract idea. 2016 WL 3514158, at *5–6 (Fed. Cir. June 27, 2016). In *BASCOM Global*, the Federal Circuit held that "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user" was an inventive concept sufficient to confer patent eligibility on claims directed to the abstract idea of "filtering content on the Internet." *Id.* at *5, 6. The court explained that, "[b]y taking a prior art filter solution (one-size-fits-all filter at the ISP server) and making it more dynamic and efficient (providing individualized filtering at the ISP server), the claimed invention represents a software-based invention that improves the performance of the computer system itself." *Id.* at *7 (internal quotation marks and alterations omitted). Here, on the other hand, the claims describe using "a set of generic computer components," *id.*, to offer more meaningful information to an individual based on his own preferences and the preferences of a group of people with whom he is in pre-defined relationships.

The claimed computer components do not render the asserted claims patent eligible. The patent describes a "communications network" according to the "present invention" that

12

comprises electronic information sources, user terminals, and a community interest management module. ('593 patent, 2:63–66, 3:9–19). Regarding the communications network that comprises the components, the patent states that "[a]ny other suitable combination of networks may be applied as well." (*Id.* at 3:25–26). The generic computer components thus do not supply an inventive concept sufficient to render the claims patent-eligible. *See Electric Power Group, LLC*, 2016 WL 4073318, at *5 (holding that the claims "do not state an arguably inventive concept in the realm of application of the information-based abstract ideas" because the claims "do not include any requirement for performing the claimed functions of gathering, analyzing, and displaying in real time by use of anything but entirely conventional, generic technology"). Additionally, the claims do not describe how the components function. (*See, e.g.*, '593 patent, 6:45–7:2, 8:12–39, 8:62–10:6 (claiming generic or functionally-described computer components "send[ing]" information to other generic or functionally-described computer components)); *see also Electric Power Group, LLC*, 2016 WL 4073318, at *5 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."); *In re TLI Commc'ns*, 823 F.3d at 615 ("[V]ague, functional descriptions of server components are insufficient to transform [an] abstract idea into a patent-eligible invention."). The specification therefore does not provide an inventive concept because it "limits its discussion of these components to abstract functional descriptions devoid of technical explanation as to how to implement the invention." *In re TLI Commc'ns*, 823 F.3d at 615.

The computer component claims, claims 9, 13, 14, and 15, fail under § 101 for the same reason that the method claims, claims 1 and 5, do. None of the claims offers a meaningful limitation beyond linking the abstract idea to generic or functionally-described computer

13

components. *See Alice Corp.*, 134 S. Ct. at 2360 ("[T]he system claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea.").

## IV.    CONCLUSION

For the reasons stated above, the asserted claims of the '593 patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101. Defendant's Motion to Dismiss for Lack of Patentable Subject Matter Pursuant to 35 U.S.C. § 101 (D.I. 10) is granted. An appropriate order will follow.

14