IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOUND VIEW INNOVATIONS, LLC,

        Plaintiff,

v.

FACEBOOK, INC.,

        Defendant.

No. 16-cv-116 (RGA)

## MEMORANDUM ORDER

This order addresses two issues relating to the claim construction in this case. I issued an opinion construing contested terms in six asserted patents on May 19, 2017. (D.I. 100).

First, Plaintiff moves (D.I. 116) for reconsideration of my finding that claim 1 of U.S. Patent No. 7,366,786 is indefinite. Claim 1 reads:

> 1. A system for authorizing a user of a client to have access to a server via the Internet comprising:
>
>     means in said client for inputting a user identification (ID) and user password;
>
>     means in said client for storing a unique client address;
>
>     communication means at said client for passing said ID, password and address to said server via said Internet in response to a request therefrom;
>
>     means at said server to store information respecting said client and to compare said stored information with said user ID and user password;

1

> means at said server to store dynamic status information respecting said user, said dynamic status information being one of enabled, disabled or active; and
>
> *means to authorize log in of said user if said ID and password agree with said stored information and if said user status is enabled.*

'786 Patent, col. 22, ll. 5–21 (emphasis added). I construed the italicized term to be indefinite because Plaintiff failed to identify corresponding structure to the function I adopted. Importantly, in the brief the Plaintiff and Defendant agreed-to on an articulation of the claimed function. I rejected their agreed-to function as an incomplete regurgitation of the claim language. I construed the function of the claimed means to be "authorizing log in and verifying user status as enabled." (D.I. 100 at 18).

As structure for the claimed function, Plaintiff pointed to a JavaScript cookie disclosed in the specification. I rejected this argument on sequencing grounds. It was not possible for the JavaScript cookie to verify the user status as enabled because the cookie came after the user's credentials had been checked. While Defendant pointed to sequencing problems in the claim construction brief, it did not articulate the sequencing problem in this manner. Nor was the particular nature of the sequencing problem I relied on in finding the claim indefinite discussed at oral argument.

Plaintiff now asks me to construe the structure to be a JavaScript Cookie and System API. It points to a clear passage in the specification to support its proposed construction. (D.I. 116 at 3 (citing '786 Patent, col. 10, ll. 21–27)).

2

Because the patent specification is clear and the exact grounds for my indefiniteness ruling were not explored in the briefs or at oral argument, my earlier decision was "manifest error." Thus, I am **GRANTING** Plaintiff's motion for reconsideration. I do not think I need "full briefing" on this. (*See* D.I. 129 at 3 n. 1). Thus, I **CONSTRUE** the term "means to authorize log in of said user if said ID and password agree with said stored information and if said user status is enabled" as follows:

| Function | Structure |
|---|---|
| "authorizing log in and verifying user status as enabled" | "a JavaScript cookie" and "System API" |

Second, in my claim construction opinion, I reserved construction of "spinning" as used in claim 13 of U.S. Patent No. 5,991,845. (D.I. 100 at 9). Claim 13 reads:

> 13. A method for providing multiple processes with mutually exclusive access to a shared resource in a system having a lock associated with the shared resource, possession of the lock signifying exclusive access to the shared resource, wherein processes desiring access to the shared resource *spin* on the lock until the lock is acquired, the method comprising the steps of:
>
> maintaining a linked queue structure of data records corresponding to a queue of processes including processes *spinning* on the lock and a process possessing the lock, one data record per process;
>
> transferring the lock from the process possessing the lock to a process next in the queue;
>
> conducting a cleanup process if one or more processes in the queue have terminated, said cleanup process removing said one or more terminated processes from the queue and reassembling the linked queue structure.

'845 Patent, col. 19, ll. 1–17 (emphasis added).

3

On August 7, 2017, I held a hearing where I took testimony from Plaintiff's expert, Dr. Xiao Su, and Defendant's expert, Dr. Sandeep Chatterjee, on the plain meaning of "spinning" to a person of ordinary skill in the art at the time of the patent's priority date, 1996. Based on that testimony and on my review of prior art articles cited by the patent, I am **CONSTRUING** "spinning" to mean "continuously running while repeatedly trying to acquire the lock."

The prior art articles I reviewed are "Algorithms for Scalable Synchronization on Shared-Memory Multiprocessors" by John M. Mellor-Crummey and Michael L. Scott, published in February 1991 in Volume 9, Number 1 of the ACM Transactions on Computer Systems, and "The Performance of Spin Lock Alternatives for Shared-Memory Multiprocessors" by Thomas E. Anderson, published in January 1990 in Volume 1, Number 1 of IEEE Transactions on Parallel and Distributed Systems. Both articles are referenced in the patent. '845 Patent, col. 2, ll. 6–10, 27–31.

In broad strokes, a spin lock ensures that multiple processes trying to access a shared resource do so one at a time. There are two components to the construction that was proposed by Defendant at the hearing and that I adopt. First, the processes trying to access the shared resource are continuously running. Second, those processes try to acquire the lock repeatedly.

First, Anderson and Mellor-Crummey clearly distinguish spin locks from locks that operate by blocking a processor and relinquishing it to do other work. *See* Anderson at p. 6, Mellor-Crummey at p. 22. Thus, I am construing spinning to require the process to run continuously.

4

Second, in describing spin locks, the two articles I reviewed, as well as the testimony of both Dr. Su and Dr. Chatterjee, support the notion that, with spin locks, the processes try to acquire the lock repeatedly.

At the hearing, Plaintiff made reference to ticket locks, referenced in Mellor-Crummey, as a type of spin lock, to suggest that a process need not check the lock repeatedly. But even with ticket locks, the process checks the lock more than once, and likely more than twice, to see if the resource is available. Mellor-Crummey at p. 27 (explaining that it is "possible to acquire the lock with only two probes" but "is not likely in practice"). A lock where the process has to attempt to acquire the lock at least twice is covered by a definition of "spinning" that requires "repeatedly trying to acquire the lock." Thus, I construe "spinning" to require that the processes trying to access the shared resource attempt to acquire the lock repeatedly.

My construction of "spinning" based on the Anderson and Muller-Crummey articles and the testimony adduced at the hearing is consistent with the patent's use of the term. *See* '845 Patent, col. 51, ll. 51–58.

**IT IS SO ORDERED** this _10_ day of August 2017.

*[signature]*
United States District Judge